UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 19-50021 |
| | ) | Chapter 7 |
| MARGARET CLAIRE GOULD | ) | |
| SSN/ITIN xxx-xx-8522 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FORREST C. ALLRED, TRUSTEE | ) | Adv. No. 20-5001 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | DECISION RE: TRUSTEE-PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| GEORGE J. NELSON | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Trustee-Plaintiff Forrest C. Allred's Motion for Summary Judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court enters these findings and conclusions pursuant to Fed.R.Bankr.P. 7052. For the reasons discussed below, the Court will grant the motion in part, deny the motion in part, and, unless the matter is otherwise resolved, set one element of 11 U.S.C. § 548(a)(1)(B) for trial.

I.

Debtor Margaret Claire Gould filed a chapter 7 petition in bankruptcy on February 15, 2019. Within two years of the petition date, Defendant George J. Nelson, an attorney, received $2,500.00 from Debtor, via her credit card, for legal services–a divorce–to be rendered for Eladio Gonzalez, with whom Debtor was sharing a rented home at the time. Through an amended complaint in this adversary proceeding, Forrest C. Allred, the chapter 7 trustee, wants to recover for the bankruptcy estate the $2,500.00 in legal fees from Attorney Nelson pursuant to

11 U.S.C. § 544 and S.D.C.L. ch. 54-8A and 11 U.S.C. § 548.  Trustee Allred now seeks summary judgment, alleging all the elements for recovery under § 548 are met.[1] Attorney Nelson challenges two of the five elements.

II.

Trustee Allred is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a).  An issue of material fact is *genuine* if the evidence is such that a trier of fact could find for either party.  *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011).  A genuine issue of fact is *material* if its resolution affects the outcome of the case.  *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 647 F.3d 833, 838 (8th Cir. 2011) (cite therein).  In reviewing a motion for summary judgment, the Court considers the pleadings, the discovery and disclosure materials in the record, and any affidavits.  *Wood v. SatCom Marketing, LLC*, 705 F.3d 823, 828 (8th Cir. 2013).  The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  The nonmovant receives the benefit of all reasonable inferences supported by the evidence.  *B.M. ex rel. Miller v. South Callaway R-II School Dist.*, 732 F.3d 882, 886 (8th Cir. 2013).

The movant bears the burden of identifying those portions of the record that

---

[1] As noted by Trustee Allred, the elements of 11 U.S.C. § 548(a)(1)(B) are not materially different than for 11 U.S.C. § 544(b), which incorporates S.D.C.L. § 54-8A-9(b), where the reach-back period is four years.  *Allred v. Nickeson* (*In re Nickeson*), Bankr. No. 13-10137, Adv. No. 14-1004, 2015 WL 9957348, at *13 (Bankr. D.S.D. May 28, 2015).

demonstrate the absence of a genuine issue of material fact. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). If the movant meets its burden, the nonmovant, to defeat the motion, must establish a genuine factual issue. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013). The nonmovant may not rest on mere allegations or pleading denials, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010), or "merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoted in *Residential Funding*, 725 F.3d at 915). Instead, the nonmovant must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[a] properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the [nonmovant] must substantiate allegations with sufficient probative evidence that would permit a finding in the [nonmovant]'s favor." *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (citations omitted) (quoted in *Kansas v. Bailey* (*In re Bailey*), Bankr. No. 18-41858-btf7, Adv. No. 18-04225-btf, 2019 WL 2179732, at *7 (Bankr. W.D. Mo. May 17, 2019)).

III.

Five elements must be established for the recovery of a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B): (1) the debtor has an interest in property; (2) the debtor's interest in the property was transferred; (3) the transfer was made within two years of the date of the filing of the debtor's petition; (4) the debtor received less than reasonably equivalent value in the exchange; and (5) the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer.

*Sullivan v. Welsh* (*In re Lumbar*), 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011). Each element must be proven by a preponderance of the evidence. *Id*. Attorney Nelson challenges two elements in opposition to Trustee Allred's motion for summary judgment: whether Debtor received value for the transfer and whether Debtor was insolvent at the time of the transfer.[2]

> Regarding the first element challenged by Attorney Nelson,
>
> [w]hen evaluating whether a debtor received the reasonable equivalence of other consideration, a court must examine the whole transaction and measure all the direct or indirect benefits and burdens. [*Pummill v. Greensfelder, Hemker & Gale* (*In re Richards & Conover Steel Co.*), 267 B.R. 602,] 612 [B.A.P. 8th Cir. 2001]; [*Meeks v. Don Howard Charitable Remainder Trust* (]*In re S. Health Care of Ark., Inc.*[)], 309 B.R. [314,] 319 [(B.A.P. 8th Cir. 2004)]. "If the measure for reasonable equivalency is the value of an indirect benefit then that benefit must be tangible." *In re S. Health Care of Ark., Inc.*, 309 B.R. at 319 (citation omitted). Indirect, non-economic, intangible, psychological benefits, such as a possible burden on a marital relationship or preservation of a family relationship, are not sufficient to constitute reasonably equivalent value. *Dietz v. St. Edward's Catholic Church* (*In re Bargfrede*), 117 F.3d 1078, 1080 (8th Cir. 1997) (citations omitted). Ultimately, a "determination of reasonably equivalent value is 'fundamentally one of common sense, measure[d] against market reality.'" [*Ahlgren v. Dailey* (]*In re Schnoor*[)], 510 B.R. [868,] 874 [(Bankr. D. Minn. 2014)] (citation omitted).

*Doeling v. O'Neill* (*In re O'Neill*), 550 B.R. 482, 510-11 (Bankr. D.N.D. 2016).

In support of his motion for summary judgment, Trustee Allred offered an affidavit by Debtor dated July 20, 2020. Therein, Debtor states she paid Attorney Nelson $2,500.00 of her own money so Attorney Nelson would provide legal services to Gonzalez, Debtor's "then-boyfriend." Debtor further stated: "I did not expect

---

[2] In some documents, including his Statement of Disputed Material Facts in Support of Objection to Motion for Summary Judgment (doc. 40), Attorney Nelson argued Debtor did not solely pay his legal fees, but he did not make that argument in his brief (doc. 39) or in his amended answer (doc. 52).

[A]ttorney Nelson to do anything for me in exchange for the payment, and at no time did [A]ttorney Nelson provide any services, or anything of value, to me."

In his brief in support of his objection to the trustee's summary judgment motion, Attorney Nelson indicated the divorce summons restrained Gonzalez and his estranged wife from disturbing the peace of the other. He argued Debtor benefitted from paying Gonzalez's legal fees for the divorce because

> [t]o initiate the divorce, [Gonzalez's estranged spouse] was served with the divorce summons and complaint. The summons required that [Gonzalez] and [his estranged spouse] keep the peace between themselves. This was of great value to the Debtor because of the ongoing aggressive and harassing behavior [Gonzalez's estranged spouse] was exhibiting toward the Debtor, and documented by law enforcement reports. The divorce's restraining order provided law enforcement with another tool to keep the peace between [Gonzalez's estranged spouse] and the Debtor.

Attorney Nelson did not provide for the record a copy of the referenced summons or any restraining order. In his brief, Attorney Nelson also argued Debtor received a benefit for paying Gonzalez's legal fees because Gonzalez contributed to Debtor's rent, utilities, and food expenses and because Debtor also received companionship and society.

Debtor signed an affidavit dated June 30, 2020 that Attorney Nelson submitted in support of his resistance to Trustee Allred's summary judgment motion. In this affidavit, Debtor confirmed she paid for Gonzalez's legal fees. Debtor described Gonzalez as a "dear family friend for many years" and said she and Gonzalez, and his children, when Gonzalez had visitation with them, shared a rented house, as friends and roommates, from March 13, 2017 until June 2018. Debtor was the only lessee on the rental agreement. Debtor and Gonzalez and his three children were included

on the rental agreement as the occupants. In her affidavit, Debtor said she "expelled [Gonzalez] . . . for non-payment." Debtor said for "more than a year" she paid "all the rent and utilities to support the household."

In her June 30, 2020 affidavit, Debtor said Gonzalez's estranged wife was "emotionally unstable" and "[o]n more than one occasion . . . exhibited threatening behavior towards" Debtor. Debtor said one incident was reported to law enforcement. Attendant thereto, Attorney Nelson submitted an incident report prepared by an officer with the Custer County Sheriff's Department. In the report, the officer details that on July 14, 2017 Debtor complained Gonzalez's estranged wife had dangerously harassed her on a public road and followed her to Gonzalez's place of employment. The officer also stated in the report that the estranged wife denied driving aggressively and indicated she was the one being harassed by Debtor and Gonzalez. According to the officer's report, he encouraged both Debtor and Gonzalez's estranged wife to document any incidents of harassment or threats and seek a protection order.

In her June 30, 2020 affidavit, Debtor also stated:

> I believe I received reasonable value from the George J. Nelson Law Office P.C. for the retainer I paid for Mr. Gonzalez. Pursuant to the divorce summons that was filed for Mr. Gonzalez's divorce, the parties were restrained from disturbing the peace of the other. Because Mr. Gonzalez was living with me, the restraining order affected me and benefitted me by giving me recourse in the event Mrs. Gonzalez tried to harass me in my home. It helped me feel safer. To that end, his services definitely benefited [*sic*] me.

Attorney Nelson also submitted his own affidavit in support of his opposition to Trustee Allred's summary judgment motion. Therein, he stated Gonzalez told him Gonzalez paid $650.00 per month toward rent and utilities and assisted Debtor with

groceries. Finally, in his affidavit, Attorney Nelson stated Debtor benefitted from Gonzalez's divorce because Debtor and Gonzalez were contemplating their own marriage.

The present record shows no genuine dispute concerning any material fact regarding this element of § 548(a)(1)(B). Debtor has admitted she paid legal fees to Attorney Nelson so Gonzalez, with whom she lived at the time, could get a divorce. Assuming all inferences in Attorney Nelson's favor, any benefit Debtor obtained from a legal restraint placed on Gonzalez and his estranged wife during the divorce is neither a direct benefit to Debtor nor a *tangible* indirect benefit to Debtor. Moreover, Gonzalez's alleged contributions to rent, utilities, and groceries were not shown to be more than necessary to ensure Gonzalez and his children had shelter and food. Finally, any companionship and society Gonzalez or his children provided Debtor and any prospect that Gonzalez would marry Debtor are also not tangible benefits. Accordingly, Attorney Nelson has not identified in the record any benefit Debtor received that meets the governing legal standard discussed in *O'Neill*, and Trustee Allred is entitled to summary judgment on this element.

Considering whether Debtor was insolvent at the time of the transfer or was made insolvent by the transfer–the second element challenged by Attorney Nelson– is more straightforward. Debtor was insolvent, as defined by 11 U.S.C. § 101(32)(A), if all her property, at a fair valuation, exceeded the sum of her debts at the time of the transfer. In other words, the Court looks at Debtor's balance sheet on the date of the

transfer.³ *O'Neill,* 550 B.R. at 508.

In support of his motion for summary judgment, Trustee Allred offered Debtor's July 20, 2020 affidavit. Therein, Debtor stated the value of her assets and the amount of her debts were approximately the same as they were on February 15, 2019, when she filed bankruptcy. No numbers were set forth, and no documents were provided or identified that would constitute Debtor's balance sheet on the transfer date. Attorney Nelson submitted Debtor's June 30, 2020 affidavit on this issue wherein Debtor stated "[a]t the time I paid [Attorney Nelson], my debts were less and my assets were greater." The date against which this comparison was made is not clear and, again, no numbers were set forth and no documents were provided or identified that would constitute Debtor's balance sheet. Because the record consists only of Debtor's incongruent affidavits and is otherwise devoid of relevant facts establishing Debtor's assets and liabilities on the date she paid the legal fees to Attorney Nelson, this element of § 548(a)(1)(B) will need to be tried.

In his objection to the trustee's summary judgment motion, Attorney Nelson stated the relevant transfer of the legal fees occurred on April 27, 2017, while Trustee Allred alleged the subject transfer was in August 2017. Attorney Nelson did not contest the August 2017 date in his initial answer but later provided a deposit slip for his law office dated April 27, 2017 and what appears to be a computer-generated statement showing a credit card transaction on April 29, 2017. Both April 2017 and August 2017 fall within the two-year reach-back period of § 548(a)(1)(B). Therefore,

---

³ Unlike 11 U.S.C. § 547(f), there is no presumption of insolvency provision in § 548.

if the parties are unable to agree on the relevant transfer date, they will need to offer evidence establishing that date as part of their "balance sheet" evidence. Because she has already offered conflicting testimony via her affidavits, neither party will be able to rely solely on Debtor's testimony to establish her assets and liabilities on the transfer date.

Finally, the Court notes the relatively modest sum at issue when compared to the cost of a trial on what Debtor's assets and liabilities were on the relevant transfer date. Before the parties go to trial, the Court encourages them to confer to see whether this matter may be resolved with minimal further expense.

An order will be entered granting in part and denying in part Trustee Allred's motion for summary judgment and setting a final pre-trial conference so a trial date may be set on the one unresolved element of § 548(a)(1)(B).

Dated: December 8, 2020.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota